IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Metropolitan Life Insurance Co., | ) |
| Plaintiff, | ) ) ) ) ) |
| v. | ) Case No. 05 C 4307 ) ) HONORABLE CHARLES R. NORGLE |
| Michael K. O'Malley, et al., | ) ) |
| Defendants. | ) |

**OPINION AND ORDER**

CHARLES R. NORGLE, Sr., District Judge

Plaintiff Metropolitan Life Insurance Company ("MetLife") brings this Complaint for unfair competition in violation of the Lanham Act, 15 U.S.C. § 1125(a), breach of contract, breach of fiduciary duty, tortious interference with contracts and business relations, conversion, civil conspiracy, and violations of the Illinois Trade Secrets Act. The contract signed by Defendant Michael K. O'Malley ("O'Malley"), includes an Arbitration Disclosure Statement. For that reason, the court, *sua sponte*, dismisses the Complaint for improper venue.

**I. BACKGROUND**

**A. Facts**

MetLife has operated an insurance agency in Downers Grove, Illinois for over twenty-five years, providing sophisticated financial planing and insurance services to its clients in the Chicagoland area. From 1998 through 2005, the Downers Grove agency was known as "O'Malley and Associates."

1

In April 2005, MetLife changed the name of the Downers Grove agency to "Preferred Planning Group," yet continued to use the name and logo of O'Malley and Associates for business purposes. MetLife alleges that it spent a great deal of money in the development and distribution of marketing materials under the O'Malley and Associates logo. Some of these materials and logos are still in circulation in the tri-state area.

O'Malley worked at MetLife from 1978 to 2005. In 1986, he was promoted to Managing Director, and in 1998, the Downers Grove agency became known as "O'Malley and Associates." Additionally in 1986, O'Malley signed an employment agreement that contained non-compete and non-solicitation provisions, as well as prohibitions against taking client files and revealing trade secrets.

The individual defendants in this case are former employees of the Downers Grove agency who left MetLife between April 28 and July 1, 2005. Around July 1, MetLife alleges that the individual defendants formed a competing agency, which is affiliated with the corporate Defendants, and is also named "O'Malley and Associates." MetLife further alleges that Defendants formed this competing agency to confuse and deceive MetLife's clients and the general public as to who worked for which agency. Additionally, MetLife alleges that O'Malley, as the former managing director of the Downers Grove agency, induced former MetLife employees to leave MetLife and breach their employment agreements. These alleged breaches include the solicitation of MetLife clients by these former employees and the unlawful taking of client files.

Furthermore, the Complaint alleges that sometime before April 2005, while O'Malley was still employed by MetLife, he began to negotiate with Guardian Life ("Guardian") to open a competing office in Downers Grove. Guardian offers financial products and services through its subsidiaries Park

Avenue Securities LLC ("PAS") and Guardian Investor Services LLC ("GIS"). O'Malley's new agency allegedly offers the same securities as MetLife's Downers Grove office.

**B. Procedural History**

MetLife filed its ten-count Complaint on July 29, 2005, alleging violations of the Lanham Act, breach of contract and fiduciary duty, tortious interference with contract, tortious interference with business relations, conversion, and violation of the Illinois Trade Secrets Act. On August 3, 2005, Defendants filed a Motion to Dismiss pursuant to the Colorado River abstention doctrine, and MetLife responded on August 18. Because the court *sua sponte* dismisses the Complaint on improper venue grounds, Defendant's Colorado River motion is denied as moot.

## II. DISCUSSION

**A. Standard of Review**

*1. Federal Court Jurisdiction*

The court "has an independent obligation to satisfy itself that federal subject matter jurisdiction exists before proceeding to the merits in any case." Am. Gen. Life & Accident Ins. Co., 337 F.3d 888, 892 (7th Cir. 2003). Federal courts are "always obliged to inquire *sua sponte* whenever a doubt arises as to the existence of federal jurisdiction." Tylka v. Gerber Prods. Co., 211 F.3d 445, 447-48 (7th Cir. 2000) (quotation and internal marks omitted). "The first thing a federal judge should do when a complaint is filed is check to see that federal jurisdiction is properly alleged." Wisconsin Knife Works v. National Metal Crafters, 781 F.2d 1280, 1282 (7th Cir. 1986). In Market Street Assocs. Ltd. Partnership v. Frey, the Seventh Circuit stated: "We remind the bench and bar of this circuit that it is their nondelegable duty to police the limits of federal jurisdiction with meticulous care . . . ." Market Street Assocs. Ltd Partnership, 941 F.2d 588, 590 (7th Cir. 1991); see also Hart v. Terminex Intern.,

336 F.3d 541, 544 (7th Cir. 2003) (reiterating the admonition that litigants and courts must "meticulously review the limits of federal jurisdiction" so as to avoid the "waste of federal judicial resources and delay of justice" that occurs where a case is found to lack subject matter jurisdiction only after proceeding on the merits); see also U.S. v. Lloyd, 398 F.3d 978 (7th Cir. 2005).

### 2. Rule 12(b)(3)

Federal Rule of Civil Procedure 12(b)(3) provides for the dismissal of an action for improper venue. FED. R. CIV. P. 12(b)(3). Under this rule, the court is not "obligated to limit its considerations to the pleadings nor convert the motion to one for summary judgment." Continental Cas. Co. v. American Nat. Ins. Co., 417 F.3d 727, 733 (7th Cir. 2005) (case dismissed because forum selection clause in contract required arbitration). Furthermore, upon "holding an evidentiary hearing to resolve material disputed facts, the district court may weigh evidence, assess credibility, and make finds of fact." Id. (citing Murphy v. Schneider Nat'l Inc., 362 F.3d 1133, 1140 (9th Cir. 2004)).

### 3. Arbitration Disclosure Statement

As a preliminary matter, the court notes that one of the agreements included an arbitration clause, which states:

> You are agreeing to arbitrate any dispute, claim or controversy that may arise between you and your firm, or a customer, or any other person that is required to be arbitrated under the rules of self-regulatory organizations with which you are registering. This means you are giving up the right to sue a member, customer, or other associated person in court, including the right to a trial by jury, except as provided by the rules of the arbitrat on forum in which a claim is filed. Compl., Ex. A.

The court is mindful that arbitration forgoes the costly expenses of litigation for a more economical method to solve legal disputes. "Parties that opt for arbitration trade the formalities of the judicial process for the expertise and expedition associated with arbitration, a less formal process of dispute resolution by an umpire who is neither a generalist judge nor a juror but instead brings to the

4

assignment knowledge of the commercial setting in which the dispute arose." Lefkovitz v. Wagner, 395 F.3d 773, 780 (7th Cir. 2005) (internal citations omitted). In addition, "parties are bound to an arbitration provision even if they did not read the provision." James v. McDonald's Corp., 417 F.3d 672, 678 (7th Cir. 2005). Arbitration is contractual by nature; "a party can be compelled to arbitrate only those matters that she has agreed to submit to arbitration." Id. at 677 (citing First Options of Chicago Inc. v. Kaplan, 514 U.S. 938, 945 (1995); Gibson v. Neighborhood Health Clinics, Inc., 121 F.3d 1126, 1130 (7th Cir. 1997)). Federal courts have long approved of arbitration as a legitimate form of dispute resolution. Anthony Longo, *Agreeing to Disagree: A Balanced Solution to Whether Parties May Contract for Expanded Judicial Review Beyond the FAA*, 36 J. MARSHALL L. REV. 1005, 1026-1027 (2003) (noting the federal courts' "jealous preference for arbitration"). Lastly, the issue of whether the parties agreed to arbitrate is governed by state law principles of contract formation. See Continental Cas. Co., 417 F.3d at 730.

Pursuant to the Federal Arbitration Act ("FAA"), arbitration may be compelled if the following three elements are shown: "(1) a written agreement to arbitrate, (2) a dispute within the scope of the arbitration agreement, and (3) a refusal to arbitrate." Zurich American Ins. Co. v. Watts Industries, Inc., 417 F.3d 682, 687 (7th Cir. 2005). "The [Federal Arbitration Act] directs courts to place arbitration agreements on equal footing with other contracts, but it 'does not require parties to arbitrate when they have not agreed to do so.'" BCS Ins. Co. v. Wellmark, Inc., 410 F.3d 349, 351 (7th Cir. 2005) (quoting EEOC v. Waffle House, Inc., 534 U.S. 279, 293 (2002)).

First, it is undisputed that there is a written agreement to arbitrate. See Compl., Ex. A. Second, the unambiguous language in the arbitration statement mandates that the parties agree to "arbitrate any dispute, claim or controversy that may arise between you and your firm . . . ." Id. The Complaint includes claims of tortious interference with contract and business relations, as well as

violations of the Lanham Act. The arbitration clause in the agreement is broad. See Continental Cas. Co., 417 F.3d at 733. Therefore, such claims certainly fall under the "any dispute, claim, or controversy" clause of the arbitration agreement. Lastly, there is a demonstrable refusal to arbitrate, by virtue of MetLife's initiation of this current action. "As a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." Id. (quoting Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp., 460 U.S. 1, 24 (1983)).

"This approach makes eminent sense." Id. at 733. The Complaint must therefore be dismissed under Rule 12(b)(3) for improper venue. See id. As a matter of contract interpretation, "if the language unambiguously answers the question at issue, the inquiry is over." Emergency Medical Care, Inc. v. Marion Memorial Hosp., 94 F.3d 1059, 1061 (7th Cir. 1996). Here, O'Malley and Ernst both signed the Arbitration Disclosure Agreement. The language is unambiguous as to the intent of the parties. In 2002, both sides agreed to arbitrate any dispute or claim. They traded "the formalities of the judicial process for the expertise and expedition associated with arbitration." Lefkovitz, 395 F.3d at 780. Now, in 2005, the parties are not allowed to ignore this signed agreement in favor of litigation in federal court. While the court has jurisdiction over this case, the Northern District of Illinois is an inappropriate venue. See Continental Ins. Co. v. M/A ORSULA, 354 F.3d 603, 608 (7th Cir. 2003) (district court has wide discretion to dismiss a case for improper venue if the decision is in conformity with established legal principles and, in terms of the court's application of those principles to the facts of the case, is within the range of options from which a reasonable trial judge would select). The court "must be mindful that the FAA 'is a congressional declaration of a liberal federal policy favoring arbitration agreements' and 'that questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration.'" Continental Cas. Co., 417 F.3d at 730-731 (quoting Moses H.

Cone Mem'l Hosp., 460 U.S. at 24). The proper venue for this action is therefore before the arbitrator and not in the United States District Court for the Northern District of Illinois.

### III. CONCLUSION

For the reasons stated above, the Complaint is dismissed pursuant to Federal Rule of Civil Procedure 12(b)(3).

IT IS SO ORDERED.

ENTER:

_____
CHARLES RONALD NORGLE, SR. Judge

United States District Court

DATED: 9-9-05